DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a summary judgment issued by the Erie County Court of Common Pleas in favor of insureds in an underinsured motorist claim against their insurer. Because we conclude the trial court's ultimate construction of the insurance policy provision at issue was correct, we affirm.
 {¶ 2} On September 23, 1995, 18-year-old appellee, Patrick R. Saunders, II, was seriously injured in an automobile collision caused by Carl Mortensen. Mortensen died in the crash.
 {¶ 3} In 1996, Saunders, II and his parents, appellees Patrick and Antoinette Saunders, sued Mortensen's estate.[1] Following a jury trial, appellees obtained a judgment against the estate in the amount of $454,768.70, $250,000 of which was apportioned to Patrick Saunders, II, with the remainder divided between his parents.
 {¶ 4} Following the verdict, appellees filed a supplemental action against Mortensen's insurer, Progressive Insurance, and appellees' own underinsured motorists ("UIM") insurer, appellant Nationwide Mutual Fire Insurance Company.[2] Appellees sought a declaration that each appellee had a UIM claim under the $100,000 per-person/$300,000 per-incident limit of the Nationwide Policy, totaling $300,000 available from Nationwide.
 {¶ 5} Nationwide moved for summary judgment, asking a declaration that their policy's single person limit UIM coverage applied to appellees' claims and that, because the Nationwide policy's $100,000/$300,000 limits were identical to the tortfeasor's Progressive coverage, appellees were not underinsured by the terms of the insurance agreement.
 {¶ 6} Appellees countered with their own motion for summary judgment, asserting that their policy was issued prior to the effective date of Am.Sub.S.B. No. 20, making the full amount of the coverage limits available. Moreover, appellees contended that, even if Am.Sub.S.B. No. 20 applied, the terms of the Nationwide UIM coverage were ambiguous and should be construed in appellees' favor.
 {¶ 7} The trial court did not reach the issue of whether Am.Sub.S.B. No. 20 applied to the policy. The court, instead, ruled that regardless of which version of Ohio's uninsured motorist statute applied, the language limiting UIM coverage was ambiguous. Construing the language in appellees' favor, the court concluded that each of the appellees has a separate UIM claim, making $300,000 available from the Nationwide policy. The court also ruled that this fund was subject to setoff only to the extent of an amount actually accessible and recoverable from the tortfeasor's liability insurance.
 {¶ 8} From this judgment, appellant now brings this appeal, setting forth the following two assignments of error:
 {¶ 9} "1. The trial court erred in construing the Nationwide's policy uninsured/underinsured motorists coverage Limits of Payment provision Section 1 as being ambiguous, and, thereby, permitting a separate per-person limit of coverage for each of the three (3) plaintiffs-appellees when only one (1) sustained bodily injury.
 {¶ 10} "2. The trial court erred in ruling that $300,000 of underinsured motorists coverage from Nationwide is available for claims arising out of the injury to Patrick Saunders, to be offset by the amount actually accessible and recoverable by plaintiffs-appellees from the tortfeasor's liability insurance."
 I. {¶ 11} Civ.R. 56(C) provides that summary judgment can be granted only if (1) no genuine issue of material fact remains to be litigated; (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to summary judgment as a matter of law.Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. The construction of an insurance contract is a matter of law. Lovewell v.Physicians Ins. Co. (1997), 79 Ohio St.3d 143, 144.
 {¶ 12} At issue in this matter is the construction of Nationwide's uninsured motorist coverage endorsement 2352, which is part of appellees' policy. The provision provides, in material part,
 {¶ 13} "Coverage agreement
 {¶ 14} "You and a relative
 {¶ 15} "We will pay compensatory damages, including derivative claims, which are due by law to you or a relative from the owner or driver of an uninsured motor vehicle because of bodily injury suffered by you or a relative. * * *"
 {¶ 16} The policy defines an uninsured motorist as, inter alia,
 {¶ 17} "(b) one which is underinsured. This is a motor vehicle for which bodily injury liability coverage or bonds are in effect; however, their total amount is less than the limits of this coverage."
 {¶ 18} Such coverage is limited, however, by the following provisions:
 {¶ 19} "Limits of payment
 {¶ 20} "Amounts payable for uninsured motorists losses
 {¶ 21} "We agree to pay losses up to the limits stated in the policy Declarations. The following applies to these limits:
 {¶ 22} "1. The bodily injury limit shown for any one person is for all legal damages, including all derivative claims, claimed by anyone arising out of and due to bodily injury to one person as a result of one occurrence.
 {¶ 23} "The per-person limit is the total amount available when one person sustains bodily injury, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims or any other claims made by anyone arising out of bodily injury, including death, to one person as a result of one occurrence.
 {¶ 24} "Subject to this per-person limit, the total limit of our liability shown for each occurrence is the total amount available when two or more persons sustain bodily injury, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims or any other claims arising out of bodily injury, including death, to two or more persons as a result of one occurrence.
 {¶ 25} "* * *
 {¶ 26} "3. The limits of this coverage will be reduced by any amount paid by or for any liable parties.
 {¶ 27} "4. Damages payable, if less than the limits of this coverage, will be reduced by any amount paid by or for any liable parties."
 {¶ 28} The trial court compared the first two paragraphs of Part 1 of the "Limits of payment" section above and concluded that the second paragraph takes away what has been granted in the coverage statement and the first paragraph of Section 1. This, the trial court found, sets up an ambiguity as to whether the policy allows one unified $100,000 limit or three separate $100,000 limits for a total of $300,000. Construing the ambiguity in favor of the insureds, the trial court concluded that the latter construction was the proper interpretation.
 {¶ 29} Appellant contends that the trial court erred in failing to construe those contractual provisions in the context of the whole contract. According to appellant, the paragraphs of Part 1 which the court ruled were in conflict must be read in pari materia. If these sections are read together and in the context of the whole, appellant insists, the inescapable import of the language is that the maximum coverage available is the single, per-person limit, irrespective of the number of individuals who have claims arising out of the injury. The trial court's failure to construe the contract as a whole and its provisions in pari materia constitutes reversible error, appellant insists.
 {¶ 30} While we generally concur that the provisions of an insurance policy, like those of any contract, should be interpreted in context, the rule remains that when the language of an insurance policy is reasonably susceptible to more than one interpretation, the terms must be construed in favor of the insured. Scott-Pontzer v. Liberty Mutl.Fire Ins. Co. (1999), 85 Ohio St.3d 660, 665. In this matter, appellant's criticism of the trial court's analysis has validity. It was improper to isolate the provisions of the policy rather than combine them. Nevertheless, the path by which a decision is reached is not as important as the correctness of the decision. An appellate court will not reverse a correct judgment simply because an erroneous reason forms its basis. Taylor v. Yale Towne Mfg. Co. (1987), 36 Ohio App.3d 62,63, citing Agricultural Ins. Co. v. Constantine (1944), 144 Ohio St. 275,284.
 {¶ 31} The language at issue in the present matter has been examined by several courts of appeal with mixed results. The majority of courts have held that there is no ambiguity. Carroll v. Allstate Ins.Co. (2002), 148 Ohio App.3d 413, 421, 2000-Ohio-3074, at ¶ 43-52;Powers v. Nationwide Mutl. Ins. Co. (Dec. 6, 1999), Mahoning App. No. 97CA219; Izev v. Nationwide Mutl. Ins. Co. (Nov. 19, 1999), Medina App. No. 2865-M; Brown v. Saliba (June 28, 2002), Noble App. No. 264.
 {¶ 32} Holding in opposition to these decisions is the Franklin County Court of Appeals which, interpreting the same provision, stated:
 {¶ 33} "The provisions [in Endorsement 2352] do not, as appellant-Nationwide contends, clearly and unambiguously state that all derivative claims are consolidated into a single claim. Rather, the provisions can reasonably be construed to mean simply that the $100,000 per-person limit for bodily injury claims applies to `anyone,' including `anyone' who brings a derivative claim and that no separate limits are available to anyone for such derivative claims. In other words, under the above provision, `anyone' who brings a derivative claim under the policy is limited to the $100,000 per-person limit and is not entitled to a different or separate limit. It would be going against the plain language of the provision to conclude that it consolidates all derivative claims into a single claim subject to the per-person limit. The provision simply does not so state." Nicolini-Brownfield v. Eigensee (Sept. 16, 1999), Franklin App. No. 98AP-1244; Webb v. Progressive Ins. Co. (Nov. 1, 2001), Franklin App. No. 01AP-534.
 {¶ 34} We must admit that this provision is like an optical illusion that changes shape depending upon the viewer's focus. If we are told that the purpose of the provision is to limit claims to a single-person limit, we can see that. However, if we view the provision in the light of the interpretation applied in Nicolini-Brownfield, we can see that this, too, is a reasonable interpretation of the language. Given this condition, we must go back to the rules previously stated. The provision at issue is reasonably susceptible to more than one interpretation and must, therefore, be construed in favor of the insureds. This is the construction employed by the trial court.
 {¶ 35} Accordingly, appellant's first assignment of error is not well-taken.
 II. {¶ 36} In its remaining assignment of error, appellant complains that the trial court should not have ruled that a UIM amount of $300,000 was available for appellant's policy, subject to setoff by the amount "actually accessible" from the tortfeasor's liability policy. Appellant argues that this is erroneous because R.C. 3937.18(A)(2) as amended by Am.Sub.S.B. No. 20 permits a limit-to-limit comparison.
 {¶ 37} Appellee responds that, even if R.C. 3937.18(A)(2) is interpreted to permit a limit-to-limit setoff, the statute is permissive, not mandatory. According to appellees, Nationwide's UIM endorsement may not reasonably be construed to impose a limit-to-limit setoff.
 {¶ 38} In our view, appellees' position is correct. As quoted above, the setoff provision of the UIM endorsement provides for total UIM coverage to be reduced, "* * * by any amount paid by or for any liable parties." We do not interpret this provision as the limit-to-limit setoff provision that appellant purports it to be.
 {¶ 39} Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 40} On consideration whereof, the judgment of the Erie County Court of Common Pleas is affirmed. Costs to appellant.
 {¶ 41} This court sua sponte notes that our holding in this matter conflicts with the opinions of the Court of Appeals of Holmes County as stated in Carroll v. Allstate Ins. Co. (2002), 148 Ohio App.3d 413,2000-Ohio-3074, as well as the other decisions cited herein. Pursuant to Section 3(B)(4) of the Ohio Constitution, whenever judges of a court of appeals find a judgment upon which they have agreed is in conflict with that of any other court of appeals, the judges shall certify the record of the case to the Supreme Court for review and final determination. SeeWhitelock v. Gilbane Bldg. Co. (1993), 66 Ohio St.3d 594, paragraph one of the syllabus. Having found such conflict, we do so hereby certify.
 {¶ 42} The question presented is whether the language of Nationwide Insurance Endorsement 2352 may be reasonably construed in the manner articulated by this court and the Franklin County Court of Appeals in Nicolini-Brownfield v. Eigensee (Sept. 16, 1999), Franklin App. No. 98AP-1244, so as to give rise to an ambiguity in underinsured motorists coverage.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., James R. Sherck, J. and Richard W. Knepper,J. CONCUR.
[1] Carl Mortensen's wife, Violet Mortensen, was named as executor of her husband's estate and, individually, as owner of the car Carl Mortensen was driving, for negligent entrustment. Two liquor licensees and several "John Does" were also named in a dram-shop complaint.
[2] Other insurers were named in Scott-Pontzer claims, but the present matter relates only to construction of Nationwide's policy, pursuant to Civ.R. 54(B).