**ROBISON, Appellant,**

v.

**PORTER et al., Appellees.**

[Cite as *Robison v. Porter* (2001), 141 Ohio App.3d 372.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H-00-028.

Decided Feb. 9, 2001.

*Edward W. Rhode III,* for appellant.

*Henry A. Hentemann* and *J. Michael Creagan,* for appellees.

SHERCK, Judge.

This is an appeal of a summary judgment awarded by the Huron County Court of Common Pleas to an insurer in a declaratory judgment action. Because we conclude that this judgment may have been erroneous in view of subsequently announced Ohio Supreme Court case law, we vacate the judgment and remand the matter to the trial court for further proceedings.

Appellant, Rebecca Robison, was seriously injured while a passenger in an automobile driven by Angela R. Porter, the alleged tortfeasor. Porter carried auto liability insurance with per person/per accident limits of $12,500/$25,000. Appellant's own underinsured motorists insurance provides her with $100,000/$300,000 coverage.

Appellant is employed by Peppridge Farms, Inc., a wholly owned subsidiary of the Campbell Soup Company. Campbell maintains a million-dollar business-auto liability policy with appellee, Travelers Indemnity Company of Illinois. Appellant sued Porter in negligence and joined appellee, seeking a declaration of her rights under the Campbell policy.

Appellee moved for summary judgment, arguing that even were appellant covered by the underinsured portion of the Campbell policy, see *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 664–665, 710 N.E.2d 1116, 1119–1120, Campbell had rejected all but the legal minimum uninsured ("UM")/underinsured ("UIM") motorist coverage. This, according to appellee, resulted in $12,500/$25,000 coverage—the same as the purported tortfeasor and substantially less than appellant's own UIM coverage. Because the Campbell policy was secondary and carried an anti-stacking provision, no coverage was available, according to appellee.

Appellant contested appellee's coverage setoff arguments by asserting that appellee's coverage was not $25,000, but the full million-dollar face value of the policy. Citing *Gyori v. Johnston Coca–Cola* (1996), 76 Ohio St.3d 565, 669 N.E.2d 824, appellant maintained that Campbell's waiver of UM/UIM was ineffective because appellee failed to present proof that such coverage was both offered and rejected in writing.

Appellee responded with the affidavit of Lawrence Sokolowski, Campbell's global risk manager, who verified his signature on an Ohio "Supplementary Commercial Automobile Application," which rejected UM/UIM coverage equal to the liability portion of the policy and elected minimum coverage: $12,500/$25,000. Sokolowski averred that it was Campbell's policy to reject all but legal minimum UM/UIM coverage in states where such was permitted. This included Ohio, and he had so advised appellee's broker.

The trial court concluded that Campbell's rejection of full UM/UIM coverage satisfied *Gyori*. It then granted appellee's motion for summary judgment.

From this judgment, appellant now brings this appeal on the trial court's determination that there was no just cause for delay pursuant to Civ.R. 54(B). Appellant sets forth the following two assignments of error:

"1. The court erred when it found that the written document advanced as a waiver of uninsured motorist coverage was an effective waiver of coverage under *Gyori v. Johnston Coca–Cola,* 76 Ohio St.3d 565 [669 N.E.2d 824] (1996).

"2. The court erred in its computation of the policy limits available to the plaintiff, Rebecca Robison."

■ On review, appellate courts employ the same standard for summary judgment as trial courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. The motion may be granted only when it is demonstrated " * * *(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, Civ.R. 56(E).

When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery* (1984), 11 Ohio St.3d 75, 79, 11 OBR 319, 322–323, 463 N.E.2d 1246, 1249–1250. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186, 1188; *Needham v. Provident Bank* (1996), 110 Ohio App.3d 817, 826, 675 N.E.2d 514, 519–520, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211–212.

■ Absent a valid offer and waiver, UM/UIM coverage, by law, arises in the amount equal to liability coverage. *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 163, 51 O.O.2d 229, 230, 258 N.E.2d 429, 431. The question in this matter is whether the undisputed Sokolowski affidavit together with the written rejection of more than minimum UM/UIM coverage constitutes facts sufficient to establish a valid rejection of the greater coverage.

Appellant points to paragraph one of the syllabus in *Gyori*, which states:

"There can be no rejection pursuant to R.C. 3737.18(C) absent a written offer of uninsured motorist coverage from the insurance provider."

Appellant argues that the rule requires a written offer antecedent to any rejection of coverage. Statements like those in the Sokolowski affidavit that the risk manager annually "discuss[ed]" UM/UIM coverage with appellee's agent are not sufficient to constitute an "offer." Neither, appellant maintains, is a rejection form which does not even use the word "offer."

The trial court, in rejecting appellant's argument, noted that nearly identical facts were set forth in *Gyori* and the Supreme Court in that case approved the offer as effective, but untimely, because the rejection form was not returned to the insurer until after the accident.

In our view, the trial court correctly interpreted *Gyori*. Robert Gyori was an employee injured while driving a vehicle owned by his employer, Johnston Coca–Cola. In a declaratory action *Gyori* sought the full UM/UIM limits of one of Johnston's auto insurers, Lumbermens Mutual, on the ground of an ineffective rejection of coverage. Johnston had discussed UM/UIM coverage with its Lumbermens's agent. The Supreme Court of Ohio concluded as follows:

"We find that Lumbermens offered UM coverage to Johnston because it discussed UM coverage with Johnston and attached to its proposal a form that allowed Johnston to accept or reject UM coverage. Johnston rejected UM coverage on this form.* * * * " *Gyori* at 568, 669 N.E.2d at 827.

Accordingly, appellant's first assignment of error, to the extent that it challenges the trial court's interpretation of *Gyori,* is not well taken.

In her second assignment of error, appellant contends that " * * * if it is assumed that the [full limits] of the Travelers policy is applicable[,]" the trial court miscomputed the setoff calculation. Since we have concluded in our consideration of appellant's first assignment of error that the full limits of the Travelers policy are not applicable, appellant's second assignment of error is also not well taken.

■ Ordinarily, our consideration of this matter would be complete at this point. However, subsequent to the submission of the briefs in this case, the Supreme Court of Ohio issued its decision in *Linko v. Indemn. Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, 739 N.E.2d 338, which appears to substantially expand on the *Gyori* standards for rejection of UM/UIM coverage by a corporation. *Linko* requires that for a rejection of UM/UIM coverage to be valid, the insurer must (1) inform the insured of the availability of UM/UIM coverage, (2) expressly set forth the premium for UM/UIM coverage, (3) include a description of the coverage, and (4) expressly state the coverage limits in the offer. Additionally, separately incorporated named insured subsidiaries must be listed on each rejection form and a parent corporation may not reject coverage for a subsidiary without the subsidiary's written authorization. *Linko* at 447–448, 739 N.E.2d at 340–342.

It appears that *Linko* may be applicable to this matter and may result in an altered outcome. However, we decline to apply *Linko* absent prior consideration by the trial court. It would be fundamentally unfair to determine the sufficiency of the parties' presentments without affording them the opportunity to make such

presentments with knowledge of the standard to be applied. Accordingly, this matter is remanded to the trial court for determination of whether *Linko* applies and to provide both parties the opportunity to present evidence going to the *Linko* factors.

On consideration, the judgment of the Huron County Court of Common Pleas is vacated, and this matter is remanded to said court for consideration of the case in light of *Linko v. Indemnity Ins. Co. of N. Am.*. Costs to be divided equally between the parties.

*Judgment vacated*
*and cause remanded.*

MELVIN L. RESNICK and KNEPPER, JJ., concur.