DECISION AND JUDGMENT ENTRY
This appeal comes to us from the Lucas County Court of Common Pleas. There, an insurer received a summary judgment in a declaratory judgment action based upon the underinsured motorist law articulated inScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660. Because we conclude that appellant's employer executed a valid waiver of such coverage, we affirm.
In 1999, appellant, Devon J. Raymond, was injured by a negligent, underinsured driver in a two-car collision. Appellant's employer, Johnson Controls, Inc., was insured with a $2 million business automobile liability policy issued by appellee, Sentry Insurance. This policy provided only minimal uninsured/ underinsured ("UM/UIM") motorists coverage.
Appellant made a claim against the Johnson Controls auto policy pursuant to Scott-Pontzer. When appellee denied the claim, citing Johnson's written rejection of full UM/UIM coverage, appellee instituted the declaratory judgment action which underlies this appeal. Appellant sought a declaration that UM/UIM coverage is imposed as a mater of law, because appellee failed to satisfy the requirements of Gyori v. JohnstonCoca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565, paragraph two of the syllabus, and Linko v. Indemnity Ins. Co. (2000), 90 Ohio St.3d 445, in obtaining the waiver of coverage. Appellant also asserted a bad faith claim against appellee. Appellee counterclaimed, requesting a declaration that 1997 amendments to R.C. 3937.18(C) superseded Gyori andLinko which were interpretations of the statute prior to its amendment.
The matter was submitted to the court on cross-motions for summary judgment. On consideration, the trial court concluded that the amended R.C. 3937.18 superseded Gyori and Linko and Johnson's rejection of UM/UIM coverage was in conformity with the statute. The court rendered summary judgment in favor of appellee and against appellant on this issue. The court also rejected appellant's bad faith claim.
From this judgment, appellant now brings this appeal, setting forth the following two assignments of error:
"ASSIGNMENT OF ERROR NO. 1:
 THE COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR DEFENDANT ON THE ISSUE OF INSURANCE COVERAGE
"ASSIGNMENT OF ERROR NO. 2:
 THE COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT FOR PLAINTIFF ON THE ISSUE OF INSURANCE COVERAGE"
On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated
 "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 67, Civ.R. 56(C).
At issue here is whether the rejection of UM/UIM coverage by appellant's employer was in conformity with the law.
The version of R.C. 3937.18(C) effective immediately prior to September 3, 1997, provided, in material part:
 "(C) The named insured may only reject or accept both [UM/UIM] coverages * * *. The named insured may require the issuance of such coverages for bodily injury or death in accordance with a schedule of optional lesser amounts * * *."
Interpreting this section, the Supreme Court of Ohio held in Gyori,supra, that no offer of UM/UIM coverage satisfies the statute unless it is in writing, id. at paragraph one of the syllabus, and that no rejection of UM/UIM coverage satisfies the statute unless it too is in writing and received by the insurer prior to the commencement of the policy year. Id. at paragraph two of the syllabus. It has long been held that absent a valid offer and waiver, UM/UIM coverage arises by operation of law in an amount equal to the policy liability coverage. Abate v.Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161 at paragraph two of the syllabus.
Linko, supra, elaborated on the content requirement sufficient to constitute an insurer's valid written offer.
 "[T]he insurer must (1) inform the insured of the availability of UM/UIM coverage, (2) expressly set forth the premium for UM/UIM coverage, (3) include a description of the coverage, and (4) expressly state the coverage limits in the offer. Robinson v. Porter
(2001), 141 Ohio App.3d 372, 376, citing Linko at 447-448.
In 1997, the General Assembly amended R.C. 3937.18(C) with 1997 Am.Sub.H. No. 261. Effective September 3, 1997, the modified statute provided:
 "(C) The named insured or applicant may reject or accept both [UM/UIM] coverages * * * or may alternatively select both such coverages in accordance with a schedule of limits approved by the superintendent [of insurance] * * *. A named insured's or applicant's written, signed rejection of both coverages * * * or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with [the statute], and shall be binding on all other named insureds, insureds, or applicants."[1]
It is undisputed that the policy at issue in this case was issued after the effective date of the 1997 amendments to R.C. 3937.18. Accordingly, that is the version of the law that governs this agreement. Ross v.Farmer Ins. Group (1998), 82 Ohio St.3d 281, 287.
At issue is the effect of the 1997 amendment on the Gyori and Linko
requirements. The questions presented are whether the 1997 amendment wholly or partially supersedes Gyori and Linko and, if partially, to what extent are the cases superseded?[2]
Finding no Ohio cases on point, the trial court found guidance in a federal decision, Hindall v. Winterthur, International (Mar. 29, 2001), U.S. Northern District of Ohio, Western Division, No. 3:00CV7429, unreported, which held that the 1997 amendment superseded Gyori andLinko because the former statute was silent as to the form of the offer or rejection while the amended version addresses these items. The trial court concluded that in enacting the amendment, the General Assembly intended to reject Gyori except for the portion that it adopted or modified (rejection must be in writing, but need not be executed prior to the effective date of the policy) and, by creating a presumption of a valid offer from a written rejection, eliminate all of the Linko
requirements.
The trial court is correct with respect to Gyori. The Legislature clearly considered that case and acted to accept that a rejection of UM/UIM coverage must be in writing and, tacitly by its creation of a presumption, that there must be an offer of coverage. The General Assembly deleted the Gyori requirement that the coverage rejection must come prior to the effective date of the policy.
However, the General Assembly could not have intended to directly negate the holding of Linko if for no other reason than that the amendment at issue predates Linko by three years.[3] Consequently, even after the 1997 amendment, there is vitality to the Linko requirements.Pillo v. Stricklin (Dec. 31, 2001), Stark App. No. 2001CA00204, unreported.
Given this, we must now determine the effect of the statutory presumption of a valid offer and whether the Linko elements are required and/or met.
Appellee's insurance proposal to Johnson Controls was for $2 million combined liability coverage for a per unit premium that included minimum required UM/UIM coverage. The proposal provided an express option of $2,000,000 UM/UIM coverage for an additional premium of $20 per unit. A Johnson officer rejected additional UM/UIM coverage by checking the "do NOT wish to purchase" line on the form reproduced below:
"Basic Insurance Options
 "Ohio law requires that we provide Uninsured Motorists (UM) coverage and Underinsured Motorists (UIM) coverage * * * in amounts equal to your bodily injury and property damage liability limit.
 "You have the right to reject this coverage or select limits lower than your policy's liability limit. If you wish to change your UM/UIM coverage limit, please initial on the appropriate line below:
___ $ 25,000 ___ $ 350,000
___ $ 50,000 ___ $ 500,000
___ $100,000 ___ $1,000,000
___ $250,000 ___ Other $____________
___ $300,000
 ___ I do NOT wish to purchase Uninsured/ Underinsured Motorists coverage and therefore reject this coverage entirely."
From whatever angle we view this transaction, the result is unfavorable to appellant. While we do not concur with the United States District Court in Hindall that the statutory presumption of a valid offer is conclusive, see Pillo, supra, we find nothing in the record which would rebut the presumption. Appellant insists that the rejection is defective because it nowhere shows that the coverage discussed is $2,000,000, but fairly reading the rejection form with the other documents before the insured clearly shows that was the amount at issue. Moreover, even were we to find that the presumption of a valid offer was rebutted, the documents submitted to the court plainly 1) inform the applicant of the availability of UM/UIM insurance, 2) expressly set forth the premium, 3) describes the coverage and, 4) expressly states the coverage limits, therefore, satisfying Linko.
Consequently, we must concur with the trial court that appellee was entitled to summary judgment in this matter. Accordingly, both of appellant's assignments of error are not well-taken.
On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.
JUDGMENT AFFIRMED.
Raymond v. Sentry Ins.
L-01-1357
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Richard W. Knepper, J., JUDGES CONCUR.
[1] The statute has subsequently twice been amended. 2000 Am.Sub.S.B. 267, effective 9-21-2000, and 2001 Am.Sub.S.B. 97, effective 10-31-2001.
[2] Interestingly, much the same questions were certified to the Ohio Supreme Court by the United States District Court for the Northern District of Ohio, Eastern Division, in Comella v. St. Paul Mercury Ins.Co. (2001), 93 Ohio St.3d 1444. The court declined to answer the questions submitted.
[3] Additionally, the legislature specifically addresses Linko in a 2001 amendment to R.C. 3937.18. 2001 Am.Sub.S.B. 97, Sec. 3, uncodified.